**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Silvio Richetti,<br><br>      *Plaintiff,*<br><br> -against-<br><br>Delivery Drivers, Inc., National Driver Solutions, LLC, Aaron A. Hageman, and Noel Aronson,<br><br>      *Defendants.* | **COMPLAINT**<br><br>**Jury Trial Demanded** |

  Plaintiff Silvio Richetti, by and through his undersigned attorney, Mohammed Gangat, Esq., as and for this Complaint against defendants Delivery Drivers, Inc. ("DDI"), National Driver Solutions ("NDS"), Aaron A. Hageman ("Hageman"), and Noel Aronson ("Aronson," and together with DDI, NDS, and Hageman, the "Defendants"), alleges upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

**NATURE OF THE ACTION**

  1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (i) unpaid overtime premium; (ii) liquidated damages; (iii) prejudgment and postjudgment interest; and (iv) attorneys' fees and costs.

  2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (i) unpaid overtime premium; (ii) unreimbursed expenses (iii) statutory penalties arising out of Defendants' failure to provide required wage and hour law notices; (iv) liquidated damages; (v) prejudgment and postjudgment interest; and (vi) attorneys' fees and costs.

1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C. § 201 et seq., and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiff has satisfied all statutory prerequisites for filing this Complaint.

4. This Court also has diversity jurisdiction over this matter as there is complete diversity between the parties as Plaintiff is a citizen of New York, while Defendants are citizens of California, Florida, and Pennsylvania.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the claims arose in this judicial district.

**PARTIES**

6. Plaintiff Silivo Richettei is an adult, over eighteen years old, and a resident of Suffolk County, New York.

7. Defendant Delivery Drivers, Inc. is a foreign business corporation organized and existing under the laws of the State of California with a principal place of business and a service process services address of 9008 Research Drive, 2nd Floor, Irvine, California 92618.

8. Defendant National Driver Solutions, LLC is foreign limited liability company existing under the laws of the State of Pennsylvania with a principal place of business and service of process address of 1500 Walnut Street 22nd Floor, Philadelphia, Pennsylvania 19102.

9. Defendant Aaron A. Hageman is an adult and a citizen of the State of California.

10. Defendant Aaron A. Hageman is the President and CEO of Delivery Drivers, Inc.

11. Defendant Noel Aronson is an adult and a citizen of the State of Florida.

12. The Individual Defendants actively participate in the day-to-day operations of DDI and NDS, acted intentionally and maliciously, and are an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2 and the Regulations thereunder, and are jointly and severally liable with DDI and NDS.

13. Upon information and belief, DDI owns and operates a headquarters office located at 9008 Research Drive, 2nd Floor, Irvine, California 92618.

14. Upon information and belief, DDI contracts with retailers, including auto parts stores, to provide drivers for delivery services. DDI recruits individual drivers who use their own cars to make deliveries for its retail customers.

15. According to contracts provided to Plaintiff by Defendants, DDI may use "Brokers" to advertise their services and recruit drivers.

16. Upon information and belief, Defendant Noel Aronson acted as a Broker and recruited drivers for DDI in New York State by placing job opening ads for delivery drivers in the name of National Driver Solutions.

17. Upon information and belief, Defendants exercise control over the terms and conditions of their employees' employment, including Plaintiff's employment, in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment.

18. Upon information and belief, at all times relevant to the allegations in this Complaint, Delivery Drivers Inc. and National Driver Solutions, LLC were, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA in that at all relevant times they (i) had employees engaged in commerce or in the production of goods for commerce, or that

3

handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

19. At all relevant times, the work performed by Plaintiff was essential to the businesses owned and operated by Defendants.

20. At all relevant times, Defendants knowingly and willfully misclassified Plaintiff as an independent contractor for whom Defendants were not required to pay overtime compensation.

21. Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation in direct contravention of the FLSA and NYLL.

22. Defendants knowingly and willfully failed to accurately provide Plaintiff his wage notices and wage statements in direct contravention of the New York Wage Theft Prevention Act.

23. Defendants knowingly and willfully failed to reimburse Plaintiff for necessary expenses, including the cost of gas and tolls incurred while Plaintiff was employed by Defendants, and improperly deducted insurance costs; these costs incurred by Plaintiff constituted illegal wage deductions.

24. Plaintiff has satisfied all conditions precedent to the institution of this action or such conditions have been waived.

## STATEMENT OF FACTS

*Plaintiff Silvio Richetti's Employment*

25. On June 2, 2022, Plaintiff Silvio Richetti answered an online job posting with the text:

> Use Your Economy Car to Deliver Auto Parts $825 Mon to Sat National Driver Solutions Bay Shore New York

26. Plaintiff was contacted by Defendant Noel Aronson who represented that he worked for National Driver Solutions, LLC, a delivery company working with Delivery Drivers,

4

Inc. Defendant Aronson forwarded contracts from DDI for Plaintiff to sign with Defendant Hageman as the signing party for DDI. Defendant Aronson stated that he manages over 200 drivers in different states.

27. The contracts classified Plaintiff's role as that of an independent contractor and implied a degree of freedom over his schedule and hours.

28. Almost immediately upon beginning his employment, Plaintiff realized that, unlike a true independent contractor, he had no control over his schedule or the terms and conditions of his employment.

29. Défendant Aronson assigned Plaintiff to make deliveries for Parts Authority, an auto parts store located at 1125A Prospect Ave, West Islip, NY 11795. Aronson required Plaintiff to work six days a week from Monday to Saturday from 8 am to 6 pm every day, an average of 60 hours per week.

30. On a day-to-day basis, Plaintiff Richetti reported to Jim, the Store Manager of the West Islip Parts Authority store. Plaintiff also had regular contact with Defendant Aronson who monitored his work performance, and directed the manner in which the work was performed.

31. At the Parts Authority on his first day, Plaintiff was given a tablet to record his parts deliveries, which also monitored Plaintiff's location and hours.

32. Despite being labeled an independent contractor, Plaintiff had no control over his hours. Defendants dictated when he should take his lunch break and when he should go home for the day.

33. In June 2022, Plaintiff contacted Jim at the Parts Authority store to let him know that he would not be coming in on Thursday because of a prior commitment.

34. The following day, Defendant Aronson called Plaintiff directly and berated him for not showing up to work that Thursday, threatening to terminate his employment.

35. Defendant Aronson also told Plaintiff that he had gotten reports from the Parts Authority store that Plaintiff wasn't always at the store promptly at 8 am every day. Defendant Aronson insisted that from now on, Plaintiff had to be present at the West Islip store promptly at 7:55 am every morning.

36. Defendants hired Plaintiff to use his own car to make auto parts deliveries six days per week, Monday - Saturday for the flat rate of $825 per week plus reimbursement for fuel costs.

37. Defendants never paid Plaintiff the agreed-upon $825 per week.

38. Plaintiff messaged Defendant Aronson on July 23, 2022 to ask questions about his pay, saying he thought the agreed upon pay was $825 per week.

39. Two days later on July 25, 2022, Defendant Aronson replied that "Weekly payment is $810 plus fuel surcharge … you finish at 3pm on Saturday so it's a little less."

40. Plaintiff replied "oh ok cool forgot we get paid hourly."

41. Defendants also failed to inform Plaintiff that they would be deducting $21.98 from every weekly paycheck for an "Occupational Accident Insurance Premium" and a "DDI Admin Fee."

42. Despite regularly working 55-60 hours per week as an employee performing non-exempt tasks, Defendants failed to pay Plaintiff the required overtime premium of time and one-half.

43. Based on his actual hours and direct deposits from Defendants, Plaintiff estimates that he was paid approximately $14.47 per hour, straight time with no overtime premium for the hours he worked each week in excess of forty hours.

6

44. Defendants never reimbursed Plaintiff for the costs of fuel or tolls as agreed.

45. Throughout his employment, Defendants never provided Plaintiff with wage statements.

46. On August 1, 2022, Plaintiff messaged Defendant Aronson to protest his pay and the terms of his employment, writing:

> "I see that you have been paying me hourly as well as monitoring the customer service fee that I should have access to to determine how much I was paid for each delivery I [was] forced to accept …"

47. Upon Plaintiff raising these issues, through text messages Defendant Aronson bizarrely accused Plaintiff of contacting him from multiple numbers, asked him if he still lived with his parents, accused him of having a "mental issue" going on, and then repeatedly told Plaintiff that he had contacted the police and that "law enforcement is now involved."

48. Defendant Aronson then called Plaintiff on the phone, angrily telling him that he was terminating his employment, and calling him a "retard" amoung other insults.

***Defendants' Misclassification Practice Against Plaintiff***

49. At all relevant times, Defendants had a policy of classifying Plaintiff as an independent contractor, and not paying him overtime premium for hours worked more than forty per week.

50. However, at all relevant times, Plaintiff was a non-exempt employee, and was misclassified by Defendants as independent contractors due to the following:

1) Plaintiff was told by Defendants that he would be classified as an independent contractor at the beginning of his employment.

2) However, Plaintiff worked the schedule set by Defendants, and directly reported to and was supervised by the Store Manager at Parts Authority, and was monitored, supervised,

7

and disciplined by Defendant Aronson for the slightest deviation from his assigned schedule.

3) Defendant Noel Aronson controls both the results to be accomplished by Plaintiff and the "manner and means" by which Plaintiff brought about that result.

51. In determining whether an independent contractor relationship exists, New York courts look to whether an individual "(1) worked at his own convenience: (2) was free to engage in other employment, (3) received fringe benefits; (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog v. Cipriani Grp., Inc*., 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 694-95 (2003).

52. Here, Plaintiff clearly did not work at his own convenience, and Defendants assigned Plaintiff a set schedule. Defendants promised Plaintiff the fringe benefit of being reimbursed for expenses, and deducted a $6.99 Occupational Accident Insurance Premium charge and a $14.99 "DDI Administration Fee" from every paycheck. While Defendants did not deduct taxes from Plaintiff's paychecks, he was effectively on Defendants' payroll with Defendants deducting insurance premiums from Plaintiff's earned wages.

53. Unlike the employment relationship that exists between Plaintiff and Defendants, a customer that hires an independent contractor pays that contractor an agreed upon flat or hourly fee via invoices without making any deductions in the way that an employer makes payroll deductions when they pay their employees. True independent contractors have their own insurance, are not promised expense reimbursement, and do not have payroll deductions taken from their earnings.

## FIRST CAUSE OF ACTION

## UNPAID WAGES IN VIOLATION OF THE FLSA

54. Plaintiff realleges and re-avers each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

55. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

56. Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

57. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

58. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

59. Plaintiff was entitled to be paid at a level at or above minimum wage for all hours worked. Plaintiff was entitled to be paid at the regular rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

60. At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff for all hours worked in excess of forty (40) hours per work week, which violated the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

61. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have

9

known such was due and that non-payment of overtime compensation would financially injure Plaintiff.

62. Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, et seq., including 29 U.S.C. §§ 21 l(c) and 215(a).

63. Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

64. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

65. Due to the reckless, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid minimum wage and overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

66. Plaintiff is entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### UNPAID WAGES IN VIOLATION OF THE NYLL

67. Plaintiff realleges and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

68. At all relevant times, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

69. Defendants knowingly and willfully violated the rights of Plaintiff by failing to pay Plaintiff the applicable minimum wages and required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

70. Defendants failed to properly disclose or apprise Plaintiff of his rights under the NYLL.

71. Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

72. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations.

73. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants the difference between his actual wages and the amounts owed under the New York Labor Law. The deficiency accounts for regular rates for all straight time hours, overtime compensations for all overtime hours, "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

74. Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## THIRD CAUSE OF ACTION

## FAILURE TO PROVIDE THE WAGE NOTICE AND WAGE STATEMENT IN VIOLATION OF THE NYLL

75. Plaintiff realleges and re-avers each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

76. Defendants have willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as their primary language, containing Plaintiff's rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

77. Through Defendants' knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

78. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if

applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

79. Through Defendants' knowing or intentional failure to provide Plaintiff with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

80. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiff with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

81. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT

82. Plaintiff realleges and re-avers each and every allegation and statement contained in the above paragraphs of the Complaint as if fully set forth herein.

83. A valid employment contract existed between Defendants and Plaintiff where Defendants agreed to pay Plaintiff $825 per week and reimburse him for gas and tolls.

84. Defendants breached their obligations under the contract by not paying Plaintiff the agreed upon $825 per week as well as reimbursing him for transportation expenses.

85. As a result of their breach of this agreement, Defendants are liable to Plaintiff for compensatory damages arising from this breach.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

86. Plaintiff realleges and re-avers each and every allegation and statement contained in the above paragraphs of the Complaint as if fully set forth herein.

87. In the alternative, if the Court finds an enforceable contract does not exist, Defendants unfairly reaped the benefits of Plaintiff's services without fully compensating Plaintiff at their agreed upon rate and reimbursing him for costs incurred while using his own vehicle.

88. Defendants are liable to Plaintiff for restitution to fully compensate him for the services rendered from which Defendants benefited.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Silvi Richetti respectfully requests that this Court grant the following relief:

i. A declaratory judgment that the actions, conduct, and practices of Defendants complained of violate the FLSA and the applicable state laws;

ii. An award for unpaid minimum wage and unpaid overtime compensation due under the FLSA and NYLL;

iii. An award for unpaid spread-of-hours premium due under the NYLL;

iv. An award of liquidated damages and/or punitive damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

v. An award of liquidated damages and/or punitive damages as a result of Defendants' failure to pay minimum wage, overtime, and spread-of-hours compensation pursuant

        to the New York Labor Law and the New York State Wage Theft Prevention Act;

vi. An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

vii. An injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

viii. An award of prejudgment and post-judgment interest;

ix. An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. 216(b) and the NYLL; and

x. Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated: New York, New York
       September 28, 2022

                                      Respectfully Submitted,

                            **LAW OFFICE OF MOHAMMED GANGAT**

By: _/s/ Mohammed Gangat_

                            Mohammed Gangat, Esq.
                            675 Third Avenue, Suite 1810
                            (718) 669-0714
                            mgangat@gangatllc.com

                            *Attorneys for Plaintiff*